JOHN B. MURISON & Co. *v.* ANDREW J. BUTLER et al.

There can be no reason given why the whole record of a suit should be introduced in evidence for the sole purpose of proving admissions in answers to interrogatories.

Courts may, at the request of one of the parties, decree that the other party bring into Court the books, papers, and other documents, which are in his possession, and which are material in the cause, provided the party requesting their production declares, in writing and on oath, what are the facts he intends to establish by such books, papers, or other documents; and, on the refusal of the party thus called upon to comply with the order of the Court, the facts stated and sworn to shall be considered as having been confessed, until satisfactory evidence be shown of the impossibility of producing such documents.

The day fixed for the trial of a suit shall be the day that the Judge shall fix in his order for the production into Court of books, papers, or other documents that are in possession of parties to a suit.

APPEAL from the Sixth District Court of New Orleans, *Howell, J.* *George S. Lacey, for plaintiffs.*—John B. Murison & Co. and James F. Allen, on or about the 19th day of August, 1862, entered into an

agreement for an adventure in cotton.  Both parties were to advance, in equal proportions, the necessary funds, and to divide equally the profits acquired or losses sustained by the adventure.

General Butler was then in command of the Department of the Gulf; and the better to secure the protection of the military authorities, his brother, Andrew J. Butler, through the instrumentality of Allen, was admitted an equal sharer in the enterprise.

To carry on this adventure, John B. Murison & Co. purchased for the concern, schooner Gino, paying for the same $4,000, and, also, Vail's bill of repairs of schooner, amounting to $308 50.  They also made large advances.

W. S. Brown was selected by J. B. Murison & Co., as master of the schooner; and, on the 19th day of August, 1862, he left New Orleans for Berwick's Bay, where the vessel was lying, to take command.  Captain Allen accompanied Brown.  They reached Berwick's Bay on the 21st of the same month.  The Gino was then in the hands of Vail, at his ship-yard, but, upon an order being presented, she was turned over to Captain Brown.  At Berwick's Bay she was laden with cotton, and, in the latter part of September, she left with one hundred and fifteen bales, arriving at the port of New Orleans on or about the 18th day of October.

Cargo and vessel were sold at public auction, October 20th, bringing, as per account sales annexed to petition, $35,041 24.

The entire proceeds of vessel and cargo were retained by defendant Butler, the purchaser, who refused to reimburse plaintiffs their advances, or to pay them their share of the profits.

This action was thereupon brought for a liquidation and settlement of the aforesaid joint adventure, Butler and Allen both being made parties.

The defendants filed their answer, simply denying the facts and allegations set forth in the petition, and, in this stage of the case, all interest on the part of Allen, disappeared.

On the 2d day of December, A. D. 1862, a motion was made on the part of the plaintiffs, for the production, by Butler, of his commercial books; this motion being accompanied with an affidavit, wherein it is averred, "that, in and by the said books, etc., plaintiffs expect to prove the interest of the several partners in the aforesaid adventure in cotton, and the amount of plaintiffs' disbursements and profits, to the extent set forth in the petition."

Upon this motion, an order was granted by the Court à quô requiring the defendant, A. J. Butler, to bring the books, etc., above referred to, into Court, on Friday, December 5th, 1862, at 10 o'clock, A. M.; and, on the 4th of December, a certified copy of this order was served on Butler.

On the 5th day of December, 1862, plaintiffs' counsel suggested to the Court that the order granted as aforesaid, and made returnable at 10 o'clock, A. M., of that day, was not timely served ; and it was thereupon

ordered that the rule be continued until Tuesday, December 9th, at 10 o'clock, A. M.

Service of the original order and accompanying affidavit, and of the order of continuance, was made on Butler personally, December 5th, 1862.

Butler refused or neglected to bring into Court, the books and documents asked for.

Plaintiffs, in their affidavit, swore that they expected to prove, by the commercial books of Butler, the amount of their disbursements and profits, to the extent set forth in their petition ($12,006 00).

Code of Practice 140: "Courts may also, at the request of one of the parties, decree that the other party bring into the Court, the books, papers, and other documents which are in his possession, * * * * and, on the refusal of the party thus called upon, to comply with the order of the Court, the facts stated and sworn to shall be considered as having been confessed, unless satisfactory evidence be shown of the impossibility of producing such documents."

Articles 141 and 473, Code of Practice, do authorize the Court, to require the production of papers, in the hands of third persons, or of one of the parties, "on the day fixed for the trial;" but Articles 140 and 475 go further. Article 140 contains no limit; while Article 475 expressly permits the production of books and papers, during "the course of the suit," or, in other words, at any stage of the cause. A proper prosecution, or defence of a case, may sometimes require the inspection of books and papers, before the trial commences; and the ends of justice would oftentimes be defeated by the contracted practice contended for by counsel for appellant.

2. "That the application for production of books and papers should and must be made according to the Articles of the Code of Practice, by way of petition and citation."

No such rule can be found in or out of the Code of Practice.

3. "That ten days' notice are required before the plaintiffs can force a trial of this rule."

Neither the Code of Practice, nor the rules of the Court, exact ten days' notice of an order for the production of books and papers. No rule is necessary, the law authorizing, upon a proper affidavit, an ex parte order, peremptory in its character. All that a party called upon to produce can require, is a reasonable time to bring the documents into Court; and what constitutes a reasonable time, the Court must determine upon the circumstances of each particular case. Two days' notice is sufficient. *Godel* v. *McLanahan*, 2 N. S. 436.

This Court has repeatedly held that a party is not bound to offer in evidence the entire record, but that he may restrict his testimony to that portion of the record relating to the matter being inquired into by the Court. This rule is too well settled now to be disturbed. *Succession of Stafford*, 2 An. 886; *Price* v. *Emerson*, 14 An. 141.

Butler's counsel also complains of the Court à quô, on account of the charge to the jury, relative to interest. He says the Court charged the jury, "that plaintiffs were entitled to recover interest on the amount of verdict, from the day of judicial demand." Is not plaintiff, in all cases, entitled to a legal interest from judicial demand, when he claims it in his petition, and upon the trial recovers a judgment for the principal sum ?

"In contracts which do not stipulate for the payment of interest, it is due from the time the debtor is put in default for the payment of the principal, and is to be calculated on whatever sum shall be found by the judgment to have been due, at the time of the default." C. C. 1932; *Reid* v. *Duncan*, 1 An. 267.

At all events, the verdict of the jury cannot well be disturbed; because, interest may have been improperly allowed for a small amount, when it appears from the evidence that the principal found by the jury is almost one thousand dollars less than plaintiffs were entitled to recover. The interest, under such circumstances, becomes a trifle, of which the law will take no notice.

In defendant's motion for a new trial, he has presented no less than fourteen grounds for relief :

1. "Contrary to law and evidence." This is a mere matter of form, requiring no attention.

2. "That the verdict and judgment are not responsive to the issues."

This action was brought for the liquidation of a certain adventure in cotton, and for the recovery of a moneyed judgment against Butler. Allen was made a party to protect his interest, if any he had. By the verdict and judgment, the adventure was formally liquidated, and defendant Butler condemned to pay the plaintiffs $12,006 02, with five per cent. interest from judicial demand. We are at a loss to conceive how the finding of a jury, and the judgment of the Court à quô, could have been made more responsive to the issues presented and tried in this cause.

3. "There is no reference in the verdict and judgment to the liquidation of the alleged partnership."

Expressly, there is not, impliedly; there is. The verdict and judgment are always construed with reference to the pleadings ; and, in this case, the jury and the lower Court, must be regarded as having liquidated the partnership, by giving Allen that which he claimed, nothing ; and condemning Butler, in full settlement, to pay the plaintiff the amount allowed. 14 An. 704, 831.

4. "The name of Allen, one of the defendants, is not mentioned in the verdict or judgment."

Allen proved to be only a nominal party to the suit. Neither John B. Murison & Co. nor Butler prayed for judgment against Allen, nor did he seek relief from them. How, then, could his name have been mentioned in the verdict or judgment ?

5. "The verdict is uncertain, and is not against A. J. Butler, or any one of defendants."

As before argued, the verdict must be construed in reference to the pleadings ; and, as no judgment was prayed for, except as against Butler, and the case was heard and determined solely upon the question of his liability to plaintiffs, it would be doing violence to the language of the verdict, to suppose that it had reference to any other person than defendant Butler. It is he, and he alone, who is condemned to pay plaintiffs $12,006 02, with interest, being the exact amount of judgment asked for against him in the petition.

The judgment of the District Judge, before whom the case was tried, and who knew exactly the finding of the jury, puts this point at rest. That is certain which may be made certain.

6. This ground of new trial is disposed of by our argument in answer to the 5th.

7. "No interest could be allowed in the verdict and judgment."

We refer your Honors to our views relative to bill of exceptions No. 2.

8. "Verdict informal, and not in accordance with the form required by Code of Practice."

Verdict on page 38 will speak for itself.

9. "The Court erred in permitting plaintiff to read to the jury the order taking the interrogatories propounded to Butler as confessed."

Defendant's counsel evidently refers to the order taking as confessed, the facts sworn to in the affidavit filed with the motion for the production of books and papers. The attention of your Honors has been directed to this question, in our notice of bill of exceptions No. 1, and further argument on that point would be a work of supererogation.

10. "That Allen could not be bound by the interrogatories taken pro confesso."

Allen is not before this court. He has abided by the judgment of the Court à quô, and Butler is without the right in law, to fight Allen's battles. If Allen is satisfied, Butler should be, so far at least as this objection is concerned.

11. "The Judge erred in his charge to the jury, as to the interest, which they must allow."

This is the third time counsel for appellant has raised the question of interest. Once in his bill of exceptions ; twice in his motion for a new trial (7th and 11th). Vide our argument upon bill of exceptions No. 2.

12. "That said verdict does not set forth in favor of which plaintiff the verdict was rendered."

The verdict finds in favor of plaintiff ; there was but one plaintiff, viz : John B. Murison & Co. ; therefore, the verdict was in their favor.

13. "That Butler could not, under any circumstances, be condemned to pay costs."

This Honorable Court, in *Pratt* v. *McHatton et al.*, 11 A. 260, held that,

in cases like the present, parties to the suit must be condemned to pay costs, pro rata and in the same proportion as their interests in the partnership. The remittitur reduced Butler's liability for costs to that extent.

14. "The Court erred in permitting plaintiffs to introduce a portion of the record in suit of *Butler* v. *John B. Murison & Co.*"

This point already noticed in our answer to bill of exceptions No. 2.

The points raised in Butler's bill of exceptions, and in his motion for new trial, are all technical, and should not be permitted to interfere with that equal-handed justice, bestowed in an eminent degree, by the verdict of the jury, and the judgment of the lower Court.

*J. Ad Rozier, for defendants and appellants.*—The plaintiffs have prepared a full brief, on their part, and we are thus enabled to present the points which we wish to submit, in a succinct manner. In the motion for a new trial, the grounds relied on are set forth in full.

1. The suit was tried by a jury. As a portion of the evidence, submitted at the trial, was the affidavit of Tisdale, one of the plaintiffs. This was based on the fact that the Court had ordered the facts stated in said affidavit to be taken pro confessis, by reason of the non-production of the commercial books of defendant.

This rule was taken previous to the fixing of the cause for trial. Article 473 C. P. applies here. The Court has a right to order books, papers and documents to be produced "on the day fixed for trial of the cause."

It is premature to ask for the production of books before the cause is fixed for trial. It is only at the trial that the questions of admissibility and effect of books and documents can be gone into. The Article 140 is to be continued, with reference to the Article 473.

The continuance asked for should have been granted. There was a proffer to bring them into Court the next day. Had the Court exercised a sound discretion, it would have granted it, for many reasons. So short a delay could not injure the plaintiffs, more especially as the cause was not fixed for trial, and it might be of serious detriment to the defendant. No mercy was shown. Less than a ten day's notice had been given.

The affidavit was defective; the Article 140 requires that the party demanding their production, should state the facts he intends to establish by the books.

Tisdale states, in a general way, that he expects to prove by them the allegations contained in the petition and the disbursements. He should specially state the facts minutely, with date, particulars, etc. But to say that the books will show the amount of expenditures, receipts, etc., without setting forth any minutiæ, is much too vague and indeterminate.

Without this portion of the evidence submitted to the jury, the plaintiffs could not recover.

2. The answers of Butler to interrogatories on facts and articles, made in

another suit, should have been rejected, for the reason that the whole record was not produced. The other suit was not between the same parties, for Allen was not a party to it. A mutilated record is inadmissible. *Desmakes* v. *Groves*, 8 N. S. 392; *Briggs* v. *Campbell*, 19 La. 526, 3 An. 594; Greenleaf Evidence, §§ 511, 512.

The authorities quoted do not apply. The answers of the defendant could not be fully understood, unless the whole proceedings were before the Court, including the evidence. They showed no reason to dispense with the rule. They do not allege that the record was voluminous, or was merely to prove an incidental point. These were not insolvent or mortuary proceedings, having no connection with the demand.

3. The verdict is uncertain, and is not against A. J. Butler, or any of the defendants. Allen being a partner, it was necessary to make him a party to the suit. 10 An. 574, 12 An. 957.

The amount due by each partner to the concern is a judgment in which the partners are respectively interested.

4. There were three partners. The issues are not disposed of. There was no reference made to Allen.

There must be a certainty in such matters.

HYMAN, C. J. Defendant, Andrew J. Butler, is appellant from a judgment rendered in this suit against him.

He filed many bills of exception to the ruling of the lower Court; only two of which do we deem it necessary to notice.

In one of the bills, he objected to the introduction in evidence of the interrogatories on facts and articles propounded to him, and his answers thereto in a suit instituted by him against plaintiffs styled "*A. J. Butler* v. *J. B. Murison & Co*," on the ground, that a part of the record in that suit could not be received in evidence separate from the whole record.

The object in offering their interrogatories, and his answers thereto, was to prove his admissions of certain facts.

His statement, when taken as admissions, cannot be decided; but there can be no reason given why the whole record of the suit should be introduced in evidence for the sole purpose of proving admissions in answers to interrogatories. 2 A. 887, Greenleaf on Evidence, vol. 1 § 512.

In the other bill, he objected to the order of the Court, requiring him to bring certain books and papers into Court on a day different from that fixed for the trial of the suit; and also to its decree, that the facts stated in the oath of the plaintiffs to obtain the order should be taken as confessed by him, defendant, because he had not brought the books and papers, on the day required by the order.

Article 140 of the Code of Practice declares, that "Courts may at the request of one of the parties decree that the other party bring into Court the books, papers, and other documents which are in his possession, and which are material in the cause, provided the party requesting their pro-

duction declares in writing, and on oath, what are the facts he intends to establish by such books, papers, or other documents; and on the refusal of the party thus called upon to comply with the order of the Court, the facts stated and sworn to shall be considered as having been confessed, until satisfactory evidence be shown of the impossibility of producing such document.

Article 473 of same Code, directs that the day fixed for the trial of a suit shall be the day that the Judge shall fix in his order for the production into Court of books, papers, or other documents that are in possession of parties to a suit.

This Article is restrictive of the first named Article, and the Court was not vested with authority to order, as it did, defendant to produce the books and papers at the motion of plaintiffs on a day different from that which the Court had fixed for the trial of the suit; and, consequently, it had no right to decree that the facts stated in the affidavit of plaintiffs to obtain the order should be taken as confessed, on defendants non-compliance with the order.

Were we to pronounce definitively on the case in the state in which it is, injustice might be done to the parties.

It is decreed that the judgment of the District Court be avoided and reversed, that plaintiffs pay the costs of appeal, and that the case be remanded for further proceedings according to law.

HOWELL, J., recused.